HOLLAND, Appellant,

v.

**RIVERSIDE METHODIST HOSPITAL et al., Appellees.**

[Cite as *Holland v. Riverside Methodist Hosp.* (1990), 70 Ohio App.3d 112.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP–1228.

Decided Nov. 20, 1990.

*Matan & Smith* and *James D. Colner,* for appellant.

*Bricker & Eckler, G. Roger King* and *Timothy J. Owens,* for appellees.

BOWMAN, Judge.

On October 31, 1985, appellant, Regina J. Holland ("Holland"), was admitted to appellee, Riverside Methodist Hospital ("Riverside"), Wesley Mental Health Unit ("Wesley"), following a suicide attempt the day before. Upon her arrival, Holland was placed on "suicide precaution" which required close observation by Wesley staff members. Appellee, Eric Maddox ("Maddox"), a nursing assistant, was assigned to closely observe Holland. Holland testified that an emotional bond developed between her and Maddox during her hospitalization as a result of long conversations and daily interaction. The physical contact between Holland and Maddox during her stay at Riverside was apparently no different than that between other patients and hospital employees.

Holland was discharged from Riverside on December 6, 1985, after being treated for depression. Sometime thereafter, an intimate, although somewhat secretive, relationship developed between Holland and Maddox.

On February 22, 1986, Holland attempted suicide again, apparently as a result of Maddox's refusal to escort her to a party given by Riverside employees. Maddox testified in his deposition that he had not wanted to publicize their relationship to employees of Riverside.

Holland testified in her deposition that she and Maddox ended their relationship in June 1986. From the time of her discharge from Riverside on December 5, 1985 until this break-up, they apparently went out in public together on only two occasions, February 14, 1986 and March 19, 1986.

Although there is a dispute as to who first suggested resuming the relationship, Holland and Maddox next saw each other in September 1986. Sometime thereafter, they attended a dinner and concert with a few of Maddox's co-workers. In November 1986, Holland became pregnant by Maddox. Maddox refused to support her or marry her and, on December 30,

1986, Holland had an abortion. Sometime in January 1987, Holland decided to contact Riverside regarding her relationship with Maddox.

On June 15, 1987, Holland filed a complaint against Riverside and Maddox based on negligence. Holland alleged Riverside was negligent by failing to adopt a policy which forbade romantic associations between employees and current and/or past patients, and further Riverside was negligent in that it knew or should have known of the relationship between Holland and Maddox and prevented it. As to Maddox, Holland alleged he was negligent in becoming romantically involved with her during and after the time she was a patient at Riverside.

On June 20, 1989, Riverside and Maddox filed a motion for summary judgment which was supported by Holland's deposition. In response, Holland filed a memorandum contra on June 30, 1989; however, Holland did not provide any further evidence or explanation as to her actions, and did not contradict her own deposition testimony, but submitted affidavits of Dr. Martin and Joan Barron, R.N., to establish a duty upon Riverside to "establish and maintain a policy or procedure which prohibits or prevents employees and/or agents of the hospital from engaging in romantic or sexual relationships with present or former patients of a mental hospital" and to create a duty on Maddox to refrain from such conduct. On September 1, 1989, the trial court granted appellees' motion for summary judgment, finding Maddox was under no legal duty not to become involved with Holland and, therefore, Riverside could not be held liable under *respondeat superior.* The trial court further found the evidence insufficient to create a legal duty on Riverside to establish or maintain a policy regarding social or romantic relationships between employees and current or past patients.

Appellant asserts two assignments of error:

"I. The trial court erred in ruling that no legal duty exists requiring a mental health hospital to establish or maintain a policy or procedure which prohibits or prevents employees and/or agents of the hospital, from engaging in romantic or sexual relationships with present or former patients of the mental health hospital.

"II. The trial court erred in granting defendant-appellees' motion for summary judgment as there exist genuine issues of material fact."

Appellant's assignments of error are related and will be discussed together.

Civ.R. 56(C) sets forth the requirements for summary judgment and states in pertinent part:

" * * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, tran-

scripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. * * * "

Thus, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. It is a procedural device designed to terminate litigation at an early stage where a resolution of factual disputes is unnecessary. However, it must be awarded with caution, resolving all doubts and construing the evidence against the moving party, and granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion. See *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 24 O.O.3d 1, 433 N.E.2d 615; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

In *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265, 270, the court addressed what was necessary to establish a cause of action in negligence and stated:

"To establish actionable negligence, one must show in addition to the existence of a duty, a breach of that duty and injury resulting proximately therefrom. * * * The existence of a duty in a negligence action is a question of law for the court to determine. * * * There is no formula for ascertaining whether a duty exists. Duty ' * * * is the court's "expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." * * *.' * * *.

"The common-law duty of due care is that degree of care which an ordinarily reasonable and prudent person exercises, or is accustomed to exercising, under the same or similar circumstances. * * * A person is to exercise that care necessary to avoid injury to others. * * * "

In *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 15 OBR 179, 472 N.E.2d 707, the court stated that the existence of a duty depends on the foreseeability of the injury. The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance of the act. The foreseeability of harm usually depends on the defendant's knowledge. See *Thompson v. Ohio Fuel Gas Co.* (1967), 9 Ohio St.2d 116, 38 O.O.2d 294, 224 N.E.2d 131.

■ Holland asserts that Maddox and Riverside owed her a much higher standard of care as a mental patient than a general hospital would and relies on *Johnson v. Grant Hospital* (1972), 32 Ohio St.2d 169, 61 O.O.2d 413, 291 N.E.2d 440; however, the court in *Johnson* merely stated, at the syllabus:

"A hospital owes a duty to its patients to exercise such *reasonable care* for their safety as their known mental and physical condition may require * * *." (Emphasis added.)

In this case, whether Maddox and Riverside owed Holland a duty turns on whether a reasonably prudent person would have anticipated that Holland would be injured by way of Maddox's and Riverside's alleged negligence. See *Menifee, supra,* and *Mussivand, supra.* Since there was nothing unusual about Maddox's actions while Holland was a patient, it was not likely that such actions would result in an injury to someone. Other than her subjective impression, Holland produced no evidence that Maddox treated her differently from any other patient at Wesley while she was in the hospital. The physical relationship between Holland and Maddox transpired outside working hours, and only after Holland's discharge. There is no evidence that Maddox had any reason to anticipate that an injury would likely result from any of his actions, and there is no evidence tending to show Maddox's superiors should have known of any improper behavior. Maddox and Riverside owed a duty of reasonable care to Holland while she was a patient at Wesley, and there is no evidence that they violated that duty. Thus, the trial court correctly determined that Maddox owed no duty to Holland to refrain from the conduct which transpired after Holland's discharge, and summary judgment was proper as to Maddox since there was no dispute as to any material fact and he was entitled to judgment as a matter of law.

■ In addition, in order to impose liability on Riverside for the acts of its employees, namely Maddox, the doctrine of *respondeat superior* requires a finding that Maddox committed a tort while acting within the scope of his employment. See *Jones v. Hawkes Hospital of Mt. Carmel* (1964), 175 Ohio St. 503, 26 O.O.2d 170, 196 N.E.2d 592. The trial court found, and we agree, that Maddox did not commit any tort and, therefore, Riverside cannot be held liable under *respondeat superior.*

■ As to any claimed direct liability on Riverside, Holland presented no evidence of any duty on Riverside to establish a policy prohibiting the conduct in which Maddox engaged. Although the deposition testimony of Dr. Martin and Barron was not a part of the record, they submitted sworn affidavits. Dr. Martin stated that it was his personal opinion that " * * * hospitals providing psychiatric medical care have the duty to take all reasonable efforts, including but not limited to, enforcing written policy and provide adequate

training and instructions, for all of its employees, including nurse's aides and nursing assistants, to prohibit and prevent all forms of inappropriate emotional and social association by employees with patients, both former and present, especially sexual relationships." Dr. Martin further stated that it was his opinion that Maddox engaged in "inappropriate conduct" with Holland; however, Dr. Martin did not refer, for example, to any hospital guidelines or standards that would impose a responsibility on hospitals to establish a policy prohibiting employees from engaging in social or romantic relationships with present or former patients outside the scope of their employment. Further, much of Dr. Martin's affidavit referred to "inappropriate conduct" without actually defining such term or stating whether such conduct occurred while Holland was a patient or after her discharge. It must be noted that, while Dr. Martin may qualify as an expert in psychiatry, appellant has not shown that he has any expertise in the administration of a psychiatric hospital and particularly of the conduct of hospital staff towards patients.

■ Barron's affidavit cannot be considered in a summary judgment motion, under Civ.R. 56(E), as an expert opinion on the issue of liability of Riverside since it is not testimony which could have been admitted at trial. Civ.R. 56(E) states in pertinent part:

"(E) * * * Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts *as would be admissible in evidence,* and shall show affirmatively that the affiant is competent to testify to the matters stated therein. * * *" (Emphasis added.)

Evid.R. 601(D) would exclude a registered nurse from qualifying as a competent witness if he or she is giving expert testimony on the issue of liability of a hospital arising out of the care or treatment of any patient. Although she would have been competent to testify as to standards of nursing care, Barron offered no opinion as to whether Maddox's conduct violated any standards established for nursing assistants. Nursing assistants and/or aides are considered separately from nurses. Maddox was a nursing assistant and the nursing statute, R.C. 4723.15, specifically excludes nurse's aides. Therefore, there is no reason to hold Maddox to a higher standard of care than even a nurse may be held.

Again, there is no evidence tending to prove that Riverside should have anticipated that an injury was likely to result from the absence of a formal policy. Furthermore, even if Riverside had a policy prohibiting employees from becoming involved with patients, there is no evidence tending to show that the absence of such a policy was the proximate cause of any injury to Holland. There is simply no evidence that, if such a policy were in place at Riverside, this situation would not have happened. It would be too specula-

tive to find that the failure of Riverside to maintain such a policy proximately caused Holland injury.

Thus, considering the evidence before it, the trial court properly reached the conclusion that there were no material facts in dispute and appellees were entitled to judgment as a matter of law.  There is no dispute that the relationship was voluntary and consensual on the part of both Holland and Maddox, and it did not result in a physical relationship until after Holland's discharge.  Furthermore, there is no evidence of any specific act or conduct on the part of Maddox, while Holland was under the care of Riverside, that was not within the scope of his duties as a nurse's aide.

For the foregoing reasons, appellant's assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

PEGGY BRYANT and HAYES, JJ., concur.

JERRY L. HAYES,, J., of the Portage County Court of Common Pleas, sitting by assignment.